UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIQUE CRIDER, RAYMOND DALE CRIDER,<br><br>  Plaintiffs,<br><br>  v.<br><br>PACIFIC ACQUISITIONS & ASSOCIATES, LLC,<br><br>  Defendant. | Case No. 14-cv-03498-NC<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AS TO RONNIQUE CRIDER; DENYING MOTION AS TO RAYMOND CRIDER**<br><br>Re: Dkt. No. 28 |

Husband and wife Raymond and Ronnique Crider allege that Pacific Acquisitions & Associates, LLC harassed Ronnique at her workplace by calling her repeatedly to collect a consumer debt. Pacific is no longer a company in good standing, so the Criders move for default judgment, claiming Pacific violated the federal and state Fair Debt Collection Practices Act. The Criders request an award of statutory and emotional damages, attorneys' fees, and costs. The Court finds that Ronnique Crider has sufficiently stated a claim that she was subject to the protection under the FDCPA and RFDCPA, and was a victim of Pacific's unlawful acts. Therefore, the Court GRANTS the motion for default judgment as to Ronnique Crider and awards her $16,209.00. However, the Court finds that Raymond Crider is not a debt holder and was not the target of Pacific's debt collection actions, and is not entitled to default judgment. The Court DENIES the motion for default judgment as to Raymond Crider.

/

Case No. 14-cv-03498-NC

## I. BACKGROUND

The Criders are married and both worked at Saint Mary's College in Moraga, California in February 2014. Dkt. No. 1, Complaint at ¶ 2. Ronnique Crider has debt on a credit card used exclusively by her for personal, family, or household purposes. Dkt. No. 31 at ¶ 2. Pacific is a Delaware LLC, and its primary business is debt collection. Complaint at ¶ 12. Pacific attempted to collect on Ronnique's credit card debt. Dkt. No. 31 at ¶ 2. On February 23, 2014, an employee from Pacific called Ronnique's office and spoke with a student worker. Complaint at ¶ 2. Pacific asked the student worker several questions in order to get more information about her, including who the worker's direct supervisor was. *Id*. Ronnique overheard the conversation, took the phone from the student, and told the Pacific employee not to call her at work. *Id*. The caller told Ronnique that he could do whatever he wanted, and that he was going to come out to her place of employment and serve her. *Id*. Pacific called Ronnique again that same day and left the following message on her work phone:

> Yes, uh, this message is for Ronnique Crider. This is, uh, Miles Gordon calling from Pacific Acquisitions & Associates contacting you in regards to uh your claim that's been forwarded to my immediate attention. I did not hear back from you. Uh, my next step will be to go ahead and give uh Michael Viola a call and go over this information with him uh so that we can go ahead and get you the documentation we need to get out to your place of employment. My office number is 855-715-7569. You'll refer to the claim number of 6898. I have not heard back from you. I'm giving you the benefit of the doubt and uh, will wait to see if I hear back from you. If I don't hear back from you by today at 3:00 p.m. PST I will move forward. I know I have the correct uh email, I hear you stating your name so I don't know what the discrepancy is, but I will move forward after today.

*Id.* at ¶ 3.

Ronnique told Raymond about the phone calls from Pacific. *Id.* at ¶ 2. The next day, Raymond drafted a letter requesting Pacific not to call Ronnique at work, not to call her co-workers, and not to come to her place of employment. *Id* at ¶ 4. Ronnique signed the letter and faxed it to Pacific in the morning. *Id*. Later that day, Pacific called Ronnique at work again and left the following voicemail:

Case No.14-cv-03498-NC            2

> This message is for Ronnique Crider. This is, uh, Miles Gordon calling from Pacific Acquisitions & Associates contacting you in regards to your, uh, claim that's been forwarded to my immediate attention. There has been a complaint filed against you. I am planning on getting you out the, uh, documents that we need to get to you at your place of employment. I can be reached at my office number of 855-715-7569. Uh, you'll refer to the claim number of 6898-C as in cat; A as in apple 2593. If I don't hear back from you then basically I'll give Mike a call and go over some information with him, clarify some information and then go ahead and move forward with this. Uh it would definitely be in your best interest to contact me as soon as you get this message. Once again, this is Miles Gordon calling from Pacific Acquisitions & Associates.

*Id*. at ¶ 5. The Criders allege that these messages caused fear, anxiety, and emotional distress because they were worried Pacific would contact Ronnique's supervisor, and that word would spread to Raymond's colleagues, which would have a negative impact on their employment. *Id*. at ¶ 7; Dkt. No. 28 at 8.

On August 1, 2014, Ronnique and Raymond Crider sued Pacific for violating (1) California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"); (2) intrusion upon seclusion; (3) the federal Fair Debt Collection Practices Act ("FDCPA"); (4) negligence; and (5) negligent training and supervision. On December 8, 2014, Pacific answered the complaint, represented by counsel. Dkt. No. 9. The parties conducted discovery in this case, and shortly before a mediation conference in June 2015, Pacific's counsel notified the Court that the company was no longer in good standing with the state of Delaware, so counsel lacked the capacity to represent Pacific. Dkt. No. 22 at 2. The Criders filed a motion to strike defendant's answer and enter default, which the Court granted. Dkt. Nos. 25, 27. The Criders now move for default judgment against Pacific, seeking $1,000 in statutory damages for a violation of the FDCPA, $1,000 in statutory damages for a violation of the RFDCPA, $15,000 in emotional distress damages, $11,250 in attorneys' fees, and $459.00 in advance costs. Dkt. No. 28 at 11.

///

## II. LEGAL STANDARD

Default may be entered against a party who fails to plead or otherwise defend an action and against whom a judgment for affirmative relief is sought. Fed. R. Civ. P. 55(a). After entry of default, the Court has discretion to grant default judgment on the merits of the case. Fed. R. Civ. P. 55(b); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to grant default judgment, the Court considers the following factors: (1) the possibility of prejudice to the plaintiff; (2) the sufficiency of the complaint; (3) the merits of the plaintiff's substantive claim; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The factual allegations of the complaint, except those concerning damages, are deemed admitted by the non-responding parties. *Shanghai Automation Instrument*, 194 F. Supp. 2d at 995; *see also Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true").

## III. DISCUSSION

### A. Jurisdiction

When presented with a motion for default judgment, the Court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the complaint alleges violations of the FDCPA. *See* 15 U.S.C. § 1692. This Court has supplemental jurisdiction over the related state law claim under the RFDCPA. *See* 28 U.S.C. § 1367. Both parties consented to the jurisdiction of this Court, prior to Pacific's default. Dkt. No. 13 at 5.

Additionally, because Pacific appeared in this lawsuit and answered the complaint, the Court finds that service was proper and that personal jurisdiction over Pacific is appropriate. *See* Fed. R. Civ. P. 12(h) (a party waives objections to service and personal

Case No.14-cv-03498-NC                                4

jurisdiction by failing to object in a motion to dismiss).

### B. Default Judgment

#### 1. Merits and Sufficiency of the Complaint

Under the second and third *Eitel* factors, in deciding whether to grant default judgment, the Court must examine the merits of the plaintiffs' substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. At this stage, the Court takes "the well-pleaded factual allegations" in the complaint as true; however, the "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of No. America*, 980 F.2d 1261, 1267 (9th Cir. 1992). In their supplemental motion for default judgment, the Criders state that they are dismissing their claims for intrusion upon seclusion, negligence, and negligent supervision. Thus, the remaining claims are (a) a violation of the RFDCPA; and (b) a violation of the FDCPA.

##### a. RFDCPA Claims

The Criders allege that Pacific violated the RFDCPA by threatening to call Ronnique's supervisor. Cal. Civ. Code. § 1788.17. To qualify for protection under the RFDCPA, plaintiffs must be "debtors" as the term is defined in California Civil Code § 1788.2(h) ("a natural person from whom a debt collector seeks to collect a consumer debt which is due and owing or alleged to be due and owing from such person"). Additionally, defendants must be "debt collectors," defined as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or other engages in debt collection." Cal. Civ. Code § 1788.2(c). Here, the Criders allege in the complaint that they are debtors, and that Pacific is a debt collector. However, in the supplemental briefing, only Ronnique Crider qualifies as a debtor. Ronnique states that the debt Pacific is seeking to collect is on her credit card, that she exclusively uses. Therefore, Raymond is not a debtor.

The RFDCPA prohibits a debt collector from threatening to take any illegal action in connection with collecting a debt. Cal. Civ. Code § 1788.10(f). The Criders allege that

Case No.14-cv-03498-NC              5

Pacific threatened to take illegal action, namely communicating with Ronnique's employer regarding an outstanding debt, a violation of the RFDCPA, Cal. Civ. Code § 1788.12(a). The Court finds that Ronnique Crider has alleged a sufficient claim under the RFDCPA, but Raymond Crider has not.

### b. FDCPA

"In enacting the FDCPA, Congress sought to counter the abusive, deceptive, and unfair debt collection practices sometimes used by debt collectors against consumer." *Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004). Plaintiffs allege that they are "consumers" as defined by 15 U.S.C. § 1692a(3) ("any natural person obligated or allegedly obligated to pay any debt"). Additionally, the complaint alleges that defendants are "debt collectors," as defined in 15 U.S.C. § 1692a(6). As noted above, only Ronnique Crider in fact is a consumer with relationship to the debt Pacific sought to collect.

The Criders allege that Pacific violated three sections of the FDCPA. First, the Criders allege that Pacific violated 15 U.S.C. § 1692(a)(3), which prohibits a debt collector from communicating with a consumer about an outstanding debt at the consumer's place of employment if the debtor knows or has reason to know that the consumer's employer prohibits the consumer from receiving this type of communication. However, the Criders admit in their declaration supporting their motion for default judgment that there is no evidence Pacific knew, or had reason to know, that Ronnique's employer prohibited her from receiving debt collection calls. Dkt. No. 33 at 5.

Second, 15 U.S.C. § 1692(a)(3) prohibits debt collectors from communicating with consumers after the consumer notifies the debt collector in writing to cease further communication about the debt. Ronnique faxed a letter to Pacific at 9:37 a.m. requesting that Pacific cease all further communication about the debt, but Pacific called Ronique later that same day. Dkt. No. 1 at ¶ 4.

Third, 15 U.S.C. § 1692d prohibits debt collectors from engaging in any conduct, the natural consequence of which is to harass, oppress, or abuse any person in the collection of a debt. While there is no clear definition of what constitutes harassment, the

Case No.14-cv-03498-NC               6

Ninth Circuit held that repeated threats of garnishment, numerous demands for overnight payment, and multiple calls to a consumer's place of employment constituted harassment. *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994). Here, Pacific made three phone calls to Ronnique's work over the course of two days. Pacific did not threaten to garnish wages, and did not use obscene or abusive language. However, Pacific did make threats to contact Ronnique's employer directly.

In total, the Court finds Ronnique Crider has sufficiently stated a claim for a violation of the FDCPA, at least under 15 U.S.C. § 1692(a)(3), but Raymond Crider has not.

### 2. Remaining *Eitel* Factors

The first factor weighs in favor of the Criders because plaintiffs would be prejudiced if the motion is denied, as plaintiffs would likely be without a recourse for recovery. *See Young v. Law Offices of Herbert Davis*, 13-cv-1108 JSW (NC), 2014 WL 3418209, at *5 (N.D. Cal. July 11, 2014). The Criders have attempted to engage Pacific and its counsel, but have been told that Pacific is unable to represent itself in court. There is no indication that Pacific has made any effort to remedy its defunct status, or that it intends to do so. Dkt. No. 34-2 at 2.

Second, the Court considers the sum of money requested by the Criders. Generally, courts are hesitant to enter default judgments where large amounts of money are at stake. *Manuel v. Thomas*, 967 F.2d 588 (9th Cir. 1992) (finding that $4,405,000 award was too large to enter default judgment). However, the Criders' request for $27,709 is within the range of reasonable awards for a default judgment. *See Young*, 2014 WL 2014 WL 3418209, at *5 (granting default judgment in the amount of $18,432.50 for violations of the RFDCPA and FDCPA).

Third, the possibility of a material dispute is minimal. The Criders have provided the Court with the exact language of Pacific's messages, and with a copy of the fax sent to Pacific requesting that Pacific stop contacting Ronnique Crider at work.

Fourth, it is unlikely that default was the result of excusable neglect, as Pacific's

Case No.14-cv-03498-NC     7

counsel clearly represented to the Court that Pacific could not defend itself because it was not a corporation in good standing with the state of Delaware for failure to pay its taxes.

Finally, although federal policy generally favors decisions on the merits, Federal Rule of Civil Procedure 55(b) permits entry of default judgment in situations where the defendant refuses to litigate. Thus, the Court finds that the remaining *Eitel* factors also weigh in favor of granting the Criders' motion for default judgment.

### C. Damages

While the Court accepts the allegations in the complaint as true at the default judgment stage, the Court has discretion to award damages as appropriate. *Geddes*, 559 F.2d at 560. Here, the Criders seek (1) statutory damages under both the RFDCPA and FDCPA, (2) emotional distress damages, (3) attorneys' fees, (4) costs.

#### 1. Statutory Damages

Courts may award up to $1,000 in statutory damages under both the FDCPA and RFDCPA. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1069 (9th Cir. 2011) (damages under both statutes are cumulative; therefore, plaintiffs are entitled to statutory remedies under both). In determining the appropriate amount of statutory damages under the FDCPA, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1); *Young v. Law Offices of Herbert Davis*, No. C 13-01108 JSW, 2014 WL 3418209, at *6 (N.D. Cal. July 11, 2014). In this case, Pacific made three phone calls in two days, all to Ronnique Crider's work. In the first phone call, Pacific engaged in questioning a student worker at Ronnique's office. Additionally, Pacific threatened to tell Ronnique's employer about her debt. Finally, Pacific called Ronnique even after she told Pacific not to contact her. Under these circumstances, the maximum statutory damages of $1,000 are appropriate.

The Criders also seeks $1,000 in statutory damages under the RFDCPA. Plaintiffs are entitled to damages under this statute if defendants "willfully" and "knowingly" violate the Act. Cal. Civ. Code § 1788.30(b). Pacific contacted Ronnique at work, after Ronnique

Case No.14-cv-03498-NC                  8

told Pacific not to contact her, thus making its violation intentional.

The Court finds that an award of $2,000 in statutory damages ($1,000 under each statute) is appropriate; however, only Ronnique Crider is entitled to statutory damages. As discussed above, only Ronnique is a consumer as defined by the statutes, and Pacific's violations of the statutes were only in relationship to Ronnique.

### 2.     Emotional Distress Damages

Plaintiffs may be awarded actual damages from a debt collector's violations of the FDCPA. 15 U.S.C. 1692k(a)(1); *Fausto v. Credigy Servs. Corp.*, 598 F. Supp. 2d 1049, 1054 (N.D. Cal. 2009); *Panahiasl v. Gurney*, No. 04-cv-04479 JF, 2007 WL 738642, at *1 (N.D. Cal. Mar. 8, 2007). However, district courts in the Ninth Circuit disagree whether a plaintiff must plead a claim for intentional infliction of emotional distress, or whether the FDCPA permits an award of emotional distress damages without a separate claim. *See Alonso v. Blackstone Fin. Grp. LLC*, 962 F. Supp. 2d 1188, 1199 (E.D. Cal. 2013) (collecting cases). In *Alonso*, Judge Boone reasoned that the FDCPA is "a national law intended to have nationwide application which requires uniformity in application." *Id.* at 1200. Thus, because states have different elements of intentional infliction of emotional distress claims, applying state law to recover emotional distress damages would be counter-intuitive to the purpose of the statute. *Id.* The Court agrees and finds that emotional distress damages are available to the Criders under the FDCPA.

Generally, in the Ninth Circuit, emotional distress damages may be proven through corroborating medical evidence or non-expert testimony. *Dawson v. Wash. Mut. Bank. F.A.*, 390 F.3d 1139, 1149-50 (9th Cir. 2004). However, a court may also award damages for emotional distress based on the plaintiff's subjective testimony where a plaintiff was the victim of "egregious conduct" or where the "circumstances make it obvious that a reasonable person would suffer significant emotional harm." *Id*. at 1150.

In *Chiverton v. Fed. Fin. Grp., Inc.*, a Connecticut district court awarded the plaintiff $5,000 in emotional distress damages when a debt collector made repeated phone calls to plaintiff's work over several months, including a call to plaintiff's supervisor. 399

F. Supp. 2d. 96, 100 (D. Conn. 2005). Similarly, an Arizona district court awarded the plaintiff $5,000 in emotional distress damages based on the plaintiff's testimony that the defendant's unfair debt collection practices caused her "to suffer a great deal of mental anguish in the form of stress, anxiety, sleeplessness, nightmares, hopelessness, nervousness, change in appetite, restlessness, irritability, digestive disorders, chest pains, migraines, depression, sudden weight gain and exacerbation of her pre-existing medical conditions." *Perkons v. Am. Acceptance, LLC*, No. 10-cv-8021 PCT, 2010 WL 4922916, at *3 (D. Ariz. Nov. 29, 2010).

Here, the Criders seek $15,000 in emotional distress damages. Ronnique Crider declares that as a result of Pacific's actions, she often suffered from an upset stomach and had trouble sleeping. Dkt. No. 28-3 at ¶ 9. She was nervous and anxious at work, wondering who knew about her debt problems and whether it would affect her employment. *Id.* Ronnique alleges that she was worried whenever she saw her supervisor because Ronnique did not know if Pacific had carried out the threat to tell her supervisor about the debt. *Id.* at ¶ 7. Eventually, the Criders both sought employment elsewhere. *Id.* at ¶ 9.

First, the Court finds that consistent with the above findings, only Ronnique Crider can claim emotional distress damages. Second, the Court finds that Pacific's conduct would make it obvious that a reasonable person would suffer emotional harm. Pacific called Ronnique at work and threatened to tell Ronnique's supervisor about her debt, a threat that Ronnique likely took seriously since Pacific already questioned a student worker at Ronnique's workplace. Thus, Ronnique is entitled to an award of emotional distress damages. However, the Court finds that $15,000 is excessive. Pacific's conduct is not as egregious as the defendants in *Chiverton*. Ronnique alleges suffering similar to the plaintiff in *Perkons*. Thus, the Court finds that an award to Ronnique of $5,000 in emotional distress damages is appropriate.

### D. Attorneys' Fees and Costs

Defendants are liable for a plaintiff's reasonable attorneys' fees in any successful action brought under the FDCPA and RFDCPA. 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.30(c). To determine what is "reasonable," courts first "calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The Court, in considering what constitutes a reasonable hourly rate, looks to the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In FDCPA actions, the "community" that a district court must consider is the district in which the court sits. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

The Criders' counsel, Jim G. Price, spent a total of 25 hours on this case, and billed the Criders at a rate of $450 per hour. Dkt. 28-2 at 2-4. Price has practiced for over 25 years and specializes in representation of consumers. *Id*. The Court finds the counsel's hourly rate of $450 per hour is too high, but that an award of $350 per hour is reasonable, since Price asked for and was awarded $350 per hour in recent cases within this district. *See Page v. Performance Debt Resolution*, No. 12-cv-04029 EDL, 2013 WL 621197, at *7 (N.D. Cal. Jan. 30, 2013) (awarding attorneys' fees for the same counsel at the hourly rate of $350 per hour); *Young*, 2014 WL 3418209, at *6 (awarding attorneys' fees for the same counsel at the rate of $350 per hour). Additionally, Price has included an itemized breakdown of the 25 hours spent on the case, which the Court finds is reasonable considering that Price litigated the case against Pacific's counsel for some time before Pacific became defunct. Dkt. No. 28-3. Therefore, the Court finds that an award of $8,750 in attorneys' fees is reasonable.

The Criders also seek an award of actual costs of $459.00, which is supported by Price's declaration. Both the FDCPA and the RFDCPA permit the Court to award costs. 15 U.S.C. § 1692k(a)(3); Cal. Civ. Code § 1788.20(c). The Court finds that $459 in costs is reasonable.

## IV. CONCLUSION

The Court concludes that the *Eitel* factors weigh in favor of granting default judgment for Ronnique Crider, but not for Raymond Crider. Additionally, the Court finds that Pacific Acquisitions & Associates is liable to Ronnique Crider in the amount of $2,000 in statutory damages, $5,000 in emotional distress damages, $8,750 in attorneys' fees, and $459 in costs. In total, Pacific is liable for $16,209.00.

**IT IS SO ORDERED.**

Dated: November 3, 2015

_____
NATHANAEL M. COUSINS
United States Magistrate Judge